Ingraham, Clarke, Houghton and Scott, JJ., concurred.

On plaintiff's appeal, order affirmed, without costs; on defendants' appeal, order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs, with leave to plaintiff on payment of such costs to renew the application on additional papers. Settle order on notice.

---

In the Matter of the Application of The City of New York, Appellant, against The Unsafe Building, Nos. 216, 218, 220 Broome Street.

Jacob Levy, Owner, Respondent; Morris Somach, Lessee.

First Department, February 5, 1909.

Municipal corporations — unsafe buildings in city of New York — liability of owner for preliminary work done by city — lis pendens canceled.

In a summary proceeding under the New York Building Code (§§ 153–158) to compel the owner of an unsafe building to make it safe and to subject the property to a lien for expenses incurred by the city in case the owner neglects to act, the only sums the owner can be compelled to pay are the preliminary expense of searches, surveys and the costs and expense of doing the work required to be done by the precept issued in the proceeding. He cannot be held for work done and expenses incurred by the city independent of and preliminary to the proceedings.

Hence, when the owner has paid the expense of the survey and the searches and has completed the work required by the precept, a *lis pendens* for preliminary work ordered by the city is unauthorized and should be canceled.

Appeal by The City of New York from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 8th day of December, 1908, discharging and canceling of record a notice of pendency of proceeding.

*John P. O'Brien* of counsel, *Samuel J. Parmenter, John F. Collins* with him on the brief [*Francis K. Pendleton, Corporation Counsel*], for the appellant.

*William K. Hartpence* of counsel, *L. Laflin Kellogg* with him on the brief [*Kellogg & Rose*, attorneys], for the respondent.

CLARKE, J.:

On the 25th of February, 1907, at about three o'clock in the morning, a portion of the building known as Nos. 216, 218, 220 Broome street, borough of Manhattan, owned by Jacob Levy, was destroyed by fire. By reason of the fire the walls became badly cracked, broken and out of plumb, and the woodwork was in a burned and damaged condition, leaving said building in an unsafe and dangerous condition, and in the opinion of the superintendent of buildings in actual and immediate danger of falling, so as to endanger life and property.

It appears by the records of the fire department, in evidence, that the said fire was extinguished at nine-twelve o'clock on said day. At eleven o'clock Bart Dunn, a contractor employed for that purpose by the superintendent of buildings, commenced work upon the building to make it safe. At about twelve o'clock on said day the owner received a notice from the superintendent of buildings stating the condition of the building, and that "You are therefore required to make same safe and secure by immediately taking down all cracked, broken, bulged and out of plumb brick walls forthwith, also take down and remove all damaged woodwork, and replace and rebuild all of the above brick walls and burnt woodwork in a good safe condition according to law. You will also take notice that you are hereby required to immediately certify to the Superintendent of Buildings for the Borough of Manhattan, your assent or refusal to secure or remove said building, and that unless you so do a survey will be ordered to be held thereon as the law directs, and that all costs and expenses incurred thereby will become a lien on said building and premises."

The attorney for the owner wrote on the same day, February twenty-fifth, to the bureau of buildings: " I * * * demand in pursuance of the law in such case made an immediate survey, and I further notify you so that any work done by your department upon

the said premises shall not become a lien upon the same but on the contrary shall be paid for and taken out of the contingent fund used and provided for that purpose. I further notify you that I am ready to accept service of all papers in this matter on behalf of the owner, Jacob Levy. I send you this letter confirming a message sent to your office on the telephone this day. I hereby waive the five days notice required of your department, and stand 'ready to accept service at once." To this letter was attached, " I consent to the above," signed by the owner.

On February twenty-sixth the superintendent of buildings sent a similar notice to that heretofore referred to as sent on the twenty-fifth. On February twenty-eighth a notice was sent that a survey would be made on the second day of March, at eleven o'clock in the forenoon, and that in case the said premises should be reported unsafe or dangerous under the said survey, the said report would be placed before the Supreme Court on the fifth day of March, and that a trial upon the allegations and statements contained in the said report would be then and there had. The owner joined in the survey and appointed a representative as required, and the survey was had on the second day of March. On the fifth of March the report cf the survey came before the Special Term, was confirmed and a precept was duly issued on said day directing that the walls of said premises be made safe and secure by immediately taking down all cracked, broken, bulged and out of plumb brick walls and also taking down and removing all damaged woodwork.

Immediately upon the issuance of said precept the owner paid the expenses and disbursements of the preliminary survey and searches and received a receipt therefor, and with the consent of the department of buildings proceeded to take down all cracked, broken, bulged and out of plumb brick walls, and to take down and remove all damaged woodwork in accordance with the requirements of said precept, and had completely taken down and removed the same within one week from the issuance of the said precept.

On March fifth the city caused to be filed in the office of the clerk of the county of New York a notice of pendency of proceedings, as follows: " Notice is hereby given that a proceeding has been commenced and is pending in this court for the enforcement of the laws and ordinances relating to the construction, alteration or

removal of buildings or other structures in the city of New York, and that the costs and expenses incurred in the execution of the precept of said proceedings, the disbursements of said proceedings, together with the preliminary expense of searches and surveys may be recovered from the above named persons, and the amount thereof be adjudged to be a lien upon the buildings and premises named in the notice of survey herein, a copy of which is filed this day in the office of the Clerk of the County of New York."

After the owner had complied with all the requirements of said precept, he caused to be erected upon said premises a new building, and in June, 1908, being desirous of obtaining a mortgage upon said premises, the title company, in searching the title, having found the notice of pendency of proceedings above alluded to on file, the owner, upon inquiry of the corporation counsel, found that the said *lis pendens* was being kept upon said premises by reason of a claim by the city of New York for expenses claimed to have been paid to one Bart Dunn, a contractor, for $6,233.61, claimed in his bill to have been done for work upon the building between February 25 and March 2, 1907, both inclusive.

It will be seen that the work for which the lien is claimed was all done before the survey and before the issuance of the precept on the fifth of March, and it is uncontradicted that although the work required to be done by said precept had been in all respects performed and complied with by said owner on or before the 12th of March, 1907, no action was taken by the city of New York or the commissioner of buildings to return said precept, nor was any action taken in regard to the prosecution of any claim under said *lis pendens*.

The owner made a motion to discharge and cancel of record the *lis pendens*, and said motion having been granted, the city appeals from the order entered thereon.

The Building Code of the city of New York, being chapter 15 of part 1 of the Code of Ordinances, adopted October 30, 1906, and approved November 8, 1906, contains provisions in regard to unsafe buildings in the city. Section 153 provides that "Any building or buildings, part or parts of a building * * * that from any cause may now be, or shall at any time hereafter become dangerous or unsafe, may be taken down and removed, or made safe and secure, in the manner following: Immediately upon such unsafe or

dangerous building or buildings, or part or parts of a building, staging or structure being so reported by any of the officers of said Department of Buildings, the same shall be immediately entered upon a docket of unsafe buildings to be kept by the Commissioner of Buildings having jurisdiction; and the owner  *  *  *  may be served with a printed or written notice containing a description of the premises or structure deemed unsafe or dangerous, requiring the same to be made safe and secure, or removed, as the same may be deemed necessary by the Commissioner of Buildings having jurisdiction, which said notice shall require the person or persons thus served to immediately certify to the said Commissioner his or their assent or refusal to secure or remove the same."

Section 154 provides that "If the person or persons so served with notice shall immediately certify his or their assent to the securing or removal of said unsafe or dangerous buildings  *  *  *  he or they shall be allowed until one o'clock P. M. of the day following the service of such notice, in which to commence the securing or removal of the same;  *  *  *  but upon his or their refusal or neglect to comply with any of the requirements of said notice so served a further notice shall be served,  *  *  *  notifying him or them that a survey of the premises named in the said notice will be made at the time and place therein named,  *  *  *  by three competent persons,  *  *  *  and that in case the said premises shall be reported unsafe or dangerous under such survey, the said report will be placed before a court therein named having jurisdiction to the extent of $1,000, and that a trial upon the allegations and statements contained in said report  *  *  *  will be had before said court, at a time and place therein named, to determine whether said unsafe or dangerous building or premises shall be repaired and secured or taken down and removed.  *  *  * ".

Section 155, entitled "Court Proceedings," provides: "Whenever the report of any such survey, had as aforesaid, shall recite that the building, premises or structure thus surveyed is unsafe or dangerous, the Corporation Counsel of The City of New York shall at the time in the said notice named, place said notice and report before the judge or justice holding a special term of the court, in the said notice named, which said judge or justice shall immediately proceed to obtain and impanel a jury, and to the trial of said issue

before said jury; * * * a jury trial may be waived by the default of the defendant or defendants to appear at the time and place named in the said notice, or by agreement, and in such case the trial may be by court, judge, justice or referee, whose report or decision in the matter shall be final; and upon the rendition of a verdict or decision of the court, judge, justice or referee, if the said verdict or decision shall find the said building, premises or structure to be unsafe or dangerous, the judge or justice trying said cause, or to whom the report of the referee trying said cause shall be presented, shall immediately issue a precept out of said court, directed to the Commissioner of Buildings, having jurisdiction, reciting said verdict or decision, and commanding him forthwith to repair and secure or take down or remove, as the case may be, in accordance with said verdict or decision, said unsafe or dangerous building * * * and said Commissioner of Buildings shall immediately thereupon proceed to execute said precept as therein directed, and may employ such labor and assistance and furnish such materials as may be necessary for that purpose, and after having done so, said Commissioner of Buildings shall make return of said precept, with an endorsement of the action thereunder and the cost and expenses thereby incurred, to the judge or justice then holding the said special term of the said court, and thereupon said judge or justice shall tax and adjust the amount indorsed upon said precept, and shall adjust and allow disbursements of said proceeding, together with the preliminary expenses of searches and surveys, which shall be inserted in the judgment in said action or proceeding, and shall render judgment for such amount, and for the sale of the said premises in the said notice named, together with all the right, title and interest that the person or persons or either of them named in the said notice had in the lot, ground or land upon which the said building or structure was placed, at the time of the filing of a notice of *lis pendens* in the said proceedings, or at the time of the entry of judgment therein to satisfy the same, * * . * and in and about all preliminary proceedings as well as the carrying into effect any order of the court or any precept issued by any court, said Commissioner of Buildings may make requisition upon the Comptroller of The City of New York for such amount or

amounts, of money as shall be necessary to meet the expenses thereof. * * * The notice of *lis pendens* provided for in this section shall consist of a copy of said notice of survey, and shall be filed in the office of a County Clerk in The City of New York, in the county where the property affected by such action, suit or proceeding is located. Provided, nevertheless, that immediately upon the issuing of said precept, the owner or owners of said building, staging or structure, or premises, or any party interested therein, upon application to the Commissioner of Buildings, shall be allowed to perform the requirements of said precept at his or their own proper cost and expense, provided the same shall be done immediately and in accordance with the requirements of said precept, upon the payment of all costs and expenses incurred up to that time. * * * "

This is a complete scheme for compelling the owners of unsafe buildings to make them safe, and, in case of refusal or neglect of owners to comply therewith, a scheme for securing the prompt performance of the necessary work by the public authorities and for the recovery of the expense thereby incurred by the enforcement of a lien placed upon the property involved. Opportunity is given to the owner to do the necessary work, and upon his default the commissioner of buildings is to do it. The obligation upon the owner, the lien upon the land, and the enforcement of said lien, however, are all predicated upon preliminary notice, upon a survey, upon a hearing in court, and upon the judgment of the court, evidenced by the precept thereof. In other words, it is a summary court proceeding. The right to take the owner's property depends upon the due process of law therein provided for, and all that he can be compelled to pay is the preliminary expense of searches and surveys, and the costs and expenses of doing the work required to be done by the precept. As, however, the exigencies of the situation may not permit the delay incident to such court proceedings, although extremely summary in their nature, and given a right of way in court, it is provided by section 157, entitled "Recovery of bodies under fallen buildings," that "In case of the falling of any building, or part thereof, in The City of New York, where persons are known or believed to be buried under the ruins thereof, it shall be the duty of the Fire Department to cause an examination of the

premises to be made for the recovery of the bodies of the killed and injured. Whenever, in making such examination, it shall be necessary to remove from the premises any debris, it shall be the duty of the Commissioners of the Department of Docks, of the Department of Parks, of the Department of Highways, and of the Department of Street Cleaning, when called upon by the Department of Buildings to co-operate, to provide a suitable and convenient dumping place for the deposit of such debris. In case there shall be, in the opinion of the Department of Buildings, actual and immediate danger of the falling of any building or part thereof so as to endanger life or property, said Department shall cause the necessary work to be done to render said building or part thereof temporarily safe until the proper proceedings can be taken, as in the case of an unsafe building, as provided for in this Code. * * * For the aforesaid purposes the said Fire Department, or the Department of Buildings, as the case may be, shall employ such laborers and materials as may be necessary to perform said work as speedily as possible."

And section 158, entitled "Fund for use and benefit of the Department of Buildings," provides: "The Corporation Counsel shall sue for and collect all penalties and take charge of and conduct all legal proceedings imposed or provided for by this Code. * * * He shall on the first day of each and every month render to each Commissioner of Buildings an account of and pay over to the Commissioner having jurisdiction the amount of such penalties and costs received by him; * * * and each Commissioner shall pay over monthly the amount of such penalties and costs so collected to the Comptroller of The City of New York as a fund for the use and benefit of the Department of Buildings for the purpose of paying any expense incurred by said department, under section 157 of this Code."

Under these provisions a method is provided to meet emergencies. It is expressly alleged by the city in the case at bar that the work performed was emergency work, and was performed pursuant to the provisions of section 157 of the Building Code to render the building temporarily safe until the proper proceedings could be taken as in the case of an unsafe building, as provided by said Building Code. It is argued with much force that if an owner's property

can be subjected to a lien and he be forced to pay for expenses incurred prior to the filing of the *lis pendens* and prior to the precept of the court, in making a building safe as a consequence of a fire, it would be as proper to charge against the building the proportionate share of expenses of sustaining the fire department, which put out the fire, and of the police department, which guarded the street during the progress of the fire. It is urged that these expenses come within the general purview of governmental expenditures to secure the life and safety of the people.

According to the affidavit of the owner, in the case at bar, the contractor employed by the superintendent of buildings was at work upon the premises before the fire was extinguished. According to an affidavit of the contractor's foreman the said work was commenced at eleven o'clock in the morning, which was less than two hours after it had been extinguished, according to the records of the fire department. In either case it is obvious that extraordinary promptness was displayed in commencing work upon the building, which was entirely completed three days before the issuance of the precept, and the expense of which amounted to upwards of $6,000.

It should be noted further that in the notice of pendency of proceedings no claim whatever is made for expenses incurred prior to the issuance of the precept, but, on the contrary, the claim is for the expenses that might be incurred in the execution of the precept.

In the face of the careful and detailed provisions for the acquiring of a lien by court proceedings, heretofore alluded to, it is evident that for work done and expenses incurred, independent of and preliminary to those proceedings, the owner cannot be arbitrarily and summarily subjected to liability therefor.

As it appears that the preliminary expenses for searches and surveys have been paid, and that all the work required to be done by the precept has been done in accordance therewith by the owner, there is no amount due for which a lien attached, and the order of the Special Term canceling the *lis pendens,* in accordance with the provisions of section 151 of the Building Code, was proper, and should be affirmed, with costs and disbursements to the respondent.

INGRAHAM, MCLAUGHLIN, HOUGHTON and SCOTT, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements.