## In re JENKINS.

(Supreme Court, Appellate Division, First Department. March 5, 1909.)

1. MUNICIPAL CORPORATIONS (§ 623*) — POLICE POWER — LIEN FOR REPAIRING DANGEROUS BUILDINGS.

Building Code, §§ 153–155, provide that, on the refusal of an owner of an unsafe building to make the same safe or remove it, a report of the building shall be made to a court, which, if it finds that the building is unsafe, shall command the commissioner of buildings to take down or make it safe, and provide that the expense thereof shall constitute a lien on the premises. Section 157 provides that, if a building collapses, the city may remove the débris, to be paid for out of the fund established under section 158. *Held,* that the city has no lien on property for expenses

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

incurred in removing débris of a collapsed building and the bodies of people that were buried thereunder.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 623.*]

2. MUNICIPAL CORPORATIONS (§ 254*)—POLICE POWER—REMOVAL OF COLLAPSED BUILDING—LIABILITY TO CONTRACTOR.

A city, proceeding under a section of its Building Code authorizing it to remove the material of a collapsed building, the expenses of which are to be paid for out of the fund established under another section of the Building Code, is directly liable to the contractor employed to do the work.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 254.*]

Clarke, J., dissenting.

Appeal from Trial Term, New York County.

The city of New York claims a lien upon the premises of Helen Hartley Jenkins, and appeals from an order granting a motion to cancel of record the lis pendens filed by the city against the premises. Order affirmed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Theodore Connoly, for appellant.

Frank C. McCoy, for respondent.

SCOTT, J. This is an appeal by the city of New York from an order canceling of record a lis pendens filed against certain premises in said city under the provisions of the Building Code relating to unsafe buildings. These provisions we have recently had occasion to examine. Matter of Unsafe Building Nos. 216, 218, and 220 Broome St. (not yet officially reported) 114 N. Y. Supp. 1018. The facts in the present case, however, differ from those presented in the cases heretofore considered.

Prior to May 1, 1907, the building known as "No. 91 Walker Street" was owned by Helen Hartley Jenkins, the present respondent, and the adjoining building, known as "No. 93 Walker Street," was owned by Emma A. Williams and Edwin M. Taylor. The old building on lot No. 91 had been wholly, or very nearly, torn down; but the party wall between the two lots had been left standing. The demolition of the building on lot No. 91 had so weakened the party wall as to render it unsafe. On May 21, 1907, a precept was issued on the application of the building department directing that the building No. 93 Walker street should be made safe in certain particulars. This precept did not affect No. 91 Walker street, or the present respondent as the owner thereof. On May 31, 1907, a second precept was issued affecting both lots, and directing that Nos. 91 and 93 Walker street should be made safe, as to the wall in question, by doing certain specified shoring, bracing and other work. On the same day was filed the lis pendens now sought to be canceled. After the issuance of the aforesaid precepts, certain work was done on the party wall by Helen Hartley Jenkins, with a view to rendering it safe, and certain work was also done by

the owners of No. 93. No work, as it appears, was done by the city of New York, of the nature specified in either precept. The precautions taken to make the wall safe proved to be ineffectual, and on June 25, 1907, the party wall and the building standing on lot No. 93 collapsed and fell, burying several people under the ruins. Thereupon the department of buildings, under the authority conferred by section 157 of the Building Code, took steps to recover the bodies, to that end removing a portion of the débris resulting from the falling of the wall and building. In prosecuting this work the city expended $1,402.12, for which it claims a lien upon the premises owned by respondent.

The procedure provided by the Building Code in the case of an unsafe building is simple and clearly expressed. Whenever a building or any part thereof is reported by an officer of the department of buildings to be unsafe, it is entered upon a docket provided for that purpose, and a notice served upon the owner or owners, lessees, or other persons having an interest therein, requiring the building to be made safe or removed, as the case may be, and further requiring the person served to immediately certify to the commissioner his or their assent or refusal to secure or remove the same. If the person so served shall not assent to the requirement to secure or remove the building before 1 o'clock p. m. of the day following the service of the notice, and shall not within that time commence the securing or removal of the same, and employ sufficient means to do the work as expeditiously as possible, a further notice may be served to the effect that at a time and place named therein a survey will be made, and that, in case the premises appear to be unsafe or dangerous, the report upon said survey will be presented to a court having jurisdiction at a time and place also specified in said notice. It is the duty of the court to try the question thus raised summarily, and, if the report of the surveyors is sustained, to issue a precept to the commissioner of buildings commanding him forthwith to take down or make safe the designated building. When the commissioner of buildings shall have executed such precept, it is his duty to return the same to the court, with an indorsement of his action thereunder, and of the cost and expense incurred, which amount, having been taxed and adjusted, is to be entered in the judgment and shall constitute a lien upon the premises, to be enforced by the sale thereof. Building Code, §§ 153, 154, 155. The notice of lis pendens in such a proceeding consists of a copy of the notice of survey, which is filed in the office of the county clerk.

It will be perceived that the work required to be done, and the expense of doing which the city might have and enforce a lien upon the property, was the bracing, shoring, and making safe of the party wall and the building standing on lot No. 93; and it was to preserve this lien, when acquired, that the lis pendens was allowed to be filed. It is not contended that the city incurred any expense for either of these purposes. Whatever was done in that regard was done by the owner. When the wall and building fell, it was no longer possible or necessary to shore up the wall, and it ceased to be dangerous, at least in the sense in which it had been found to be dangerous upon the survey. If a new danger had been created in consequence of the collapse, it would

have been necessary to initiate new proceedings, upon a different state of facts. The work done by the city, and for which the expenditure was incurred, was not for the purpose of making the ruins safe, but for the purpose of recovering the bodies of those who had been buried. This work is authorized and provided for by section 157 of the Building Code, and is to be paid for out of the fund established under section 158. Nowhere is there to be found in the Building Code any provision looking to the creation of a lien upon the property for the expense incurred in removing or digging into the ruins of a building for the purpose of removing bodies therefrom. The Building Code distinctly provides for two contingencies. If a building is unsafe, the city may proceed to make it safe, and may acquire a lien on the premises for the expense thereof, but only after due notice, and a judicial inquiry and determination as to the dangerous condition, and as to what is necessary to be done to restore a condition of safety, and an opportunity has been afforded to the owner to himself put the property in a safe condition. If the city has expended no money to make the building safe, it can have no lien, and the lis pendens should not be allowed to stand on record as an apparent cloud upon the title. This is the case presented upon this appeal.

The other contingency provided for is where a building has fallen and there are bodies buried beneath the ruins. In such case it is the duty of the department of buildings to take steps to recover the bodies, without waiting to notify the owner or to obtain a judicial mandate or precept. For the work thus done the city is directly liable to the contractor. Sweeny v. City of New York, 173 N. Y. 414, 66 N. E. 101. The Building Code provides for no lis pendens and no lien in such a case. Whether or not the city would have a right of action over against the owner we need not now determine. It is manifest that if the bodies were not promptly removed a dangerous nuisance upon the premises would result, which it would be the duty of the owner to abate, and which, in case he neglected to do so, the public health authorities would be justified in abating. I do not consider that it is important that the commissioner of buildings has not returned the precept, as the Building Code requires him to do. The admitted facts show that the city is entitled to no lien for the only expense which it claims to have incurred.

Order affirmed, with $10 costs and disbursements.

INGRAHAM, McLAUGHLIN, and LAUGHLIN, JJ., concur.

CLARKE, J. I dissent. A precept was duly issued in this case. The answering affidavit of the superintendent of buildings alleges that:

"The superintendent of buildings thereupon, pursuant to the aforesaid sections of the Building Code and said precepts, directed one Bart Dunn, a contractor, to employ such labor and assistance and furnish such materials as were necessary for the making of the premises safe as commanded by said precepts, * * * and to take down and remove the dangerous portion of said building and wall; that said Bart Dunn thereupon on June 25, 1907, and July 1, 1907, and between said dates, furnished labor and materials to the value of $1,402.12 for the purpose of making said premises safe, as commanded by said precepts, * * * and in the taking down and removing of the dangerous portions of said building and party wall."

It seems to me that an issue of fact is raised as to whether the work charged for, or any of it, was done in accordance with the precepts theretofore issued, which should not be determined upon motion to vacate the lis pendens, but should be determined upon the return of the precept. I agree that no lien attaches for work directed by the superintendent of buildings not required by nor in conformity with the precept; but, as it is affirmatively alleged that work was done in accordance therewith, I think the order appealed from should be reversed, and the motion denied.