That the Public Service Commission, to avoid grade crossing, may direct alterations or changes in existing highways was not first introduced into the law by the New Grade Crossing Act (Laws of 1928, ch. 678). We find in sections 89, 92 and 94 of the Railroad Law (Laws of 1910, ch. 481, as amd.; Cons. Laws, ch. 49) the power of the Public Service Commission to determine that alterations or changes may be made in any existing highway, at or in the vicinity of a proposed crossing for the purpose of avoiding a crossing at grade.
Pursuant to the constitutional amendment (Art. 7, § 14) providing State aid, chapter 678 of the Laws of 1928 was passed, which says that all existing highway-railroad crossings at grade to be eliminated from the proceeds of bonds issued pursuant to law and the Constitution shall be eliminated in the manner prescribed by the act. We must look to the act for the jurisdiction and power of the Commission as well as the extent of the work and manner of payment. Section 2, subdivision 5, of the act reads as follows: "* * * Such elimination order shall determine the manner in which such elimination shall be made including a determination as to the alteration to be made in such crossing, its approaches, the method of crossing, the character of the structure and approaches, the type and extent of pavement, the location of the crossing, the closing and discontinuance of a crossing and the diversion of traffic from an existing crossing to an existing or a new highway, road, street or crossing, or the opening of an additional crossing and also including, if so determined by the commission, a change in the location of the railroad when necessary to effect the elimination of such crossing. * * *" *Page 198 
Section 2, subdivision 7, reads: "If a railroad corporation, the department of public works, a park commission or a county or other municipal corporation in which the work of elimination is located, desires to make or cause to have made changes or additions which in the opinion of the public service commission are other than necessary for the elimination, and to do or cause to be done such changes or additions in connection with the work of elimination, such changes or additions shall be shown by the plans and shall be described in the specifications, or otherwise, and the approval of such plans and specifications by the commission, given after a hearing on notice to the interested parties, shall be embodied in an order containing findings specifying such changes and additions. Such order shall state an estimated cost of such desired changes or additions other than necessary for the elimination, and the portions thereof chargeable, respectively, to the railroad corporation or corporations, the state, the park commission or the county or counties and other municipal corporation or corporations. * * *"
Section 3 provides how the cost of all eliminations ordered shall be paid. Turning to section 5, subdivision 1, we find that it enacts the method of acquiring property for highways or to which an easement right may be deemed necessary. Section 5, subdivision 11, reads as follows: "11. In case any lands or easement rights in and to lands acquired as aforesaid and not conveyed to a railroad corporation physically form a part of any existing highway, road or street or a new highway, road or street opened to take the place of an existing highway, road or street, the fee title of which existing highway, road or street is vested in a municipal corporation, such municipal corporation may apply to the department of public works for a conveyance of such lands or easement rights. The department of public works, with the approval of the public service commission, may thereupon certify to the board of commissioners of the land office such *Page 199 
facts and that such lands or rights, specifically describing same, should be conveyed to such municipal corporation upon such terms and conditions as may be prescribed, whereupon the board of commissioners of the land office shall grant and convey such lands or rights to such municipal corporation upon such terms and conditions." (Note the reference to new highways.)
Section 5, subdivision 12, reads: "12. Any lands or easement rights in and to lands acquired as aforesaid and not conveyed to a railroad corporation or a municipal corporation, physically forming a part of any existing or proposed highway, road or street, shall become a part of the state, county, town, city, village or other highway or street system of which such existing or proposed highway, road or street forms a part and shall be under the jurisdiction of and maintained by the proper authorities having charge of such respective systems."
These provisions indicate to my mind that the elimination may take in property required for new highways, new relocations, and that while the cost is to be apportioned as the act provides, certain adjustment must be made if the new roads and highways are turned over to the municipalities. Similar provisions apply to the railroad when it desires to keep and retain property which it can use as part of its right-of-way.
The change in a grade crossing depends upon the map and plan adopted pursuant to section 2, subdivision 6. This may call for highway changes. The cost is the whole cost, the plan and map being considered as one undertaking. This cost, including the elevation of the highway or the tracks and the changes made in the highways or the creation of a new highway, is to be paid for as the act provides. The portion to be borne by the railroad is not limited merely to the elevated or lowered portion.
We gather from all the provisions of this Grade Crossing Act that it was contemplated, as in the Railroad Law, *Page 200 
that properly to eliminate some grade crossings it was necessary or reasonable to change existing roads or highways or open new ones. We know from the records before us in other cases that a number of different plans are sometimes presented to the Public Service Commission. In Matter of Grade Crossing Elimination
(N.Y., N.H. H.R.R. Co.) (259 N.Y. 639) there were three such maps presented suggesting various methods and routes. The Commission, after due hearing, must exercise its judgment and discretion in final determination. Evident is it that to accomplish the salutary purpose intended by the Constitution and the law, new highways must at times be opened to reach the changed location of the new overhead or undergrade crossing. As in the present case, it may be very impracticable to make the improvement at the existing grade crossing. Under such circumstances, the opening of a new highway of approach is a necessary part of the improvement and we can see no reason why the railroad should not share the cost, as provided by the statute, of the entire change. The provisions for acquiring the land and the disposition of the highways or land after the improvement is completed speak loudly in favor of this conclusion. While section 2, subdivision 7, refers to the sharing in changes not found necessary to the elimination, this we think means that the cost of these unnecessary changes should be shared only by the municipality or company benefited by such unnecessary changes. To make a railroad pay for improvements in no way connected with the elimination or the work of eliminating dangerous crossings would probably be unconstitutional as taking the company's property without due process. We have no such case here. Anything, however, appropriate and suitable in the judgment of the Commission to accomplish the aim and purpose of the enactment would come within the constitutional limitations. The order of the Public Service Commission must be reasonable and upon review should it appear that the *Page 201 
cost of an improvement has been saddled upon the railroad which has little or nothing to do with elimination work, the courts can deal with the matter and set aside the order as an arbitrary act, or an abuse of discretion.
The salvation of all these remedial enactments which can never go into all the details is the wisdom and caution, the fairness of the regulating body. Our affirmance, without opinion, of the case of Matter of Grade Crossing Elimination (N.Y., N.H. H.R.R. Co.) (259 N.Y. 639) was with the view that the Commission in that case, considering all the facts and the plans submitted, had gone too far. Other purposes had entered into the creating of the new highway than to make available an overhead crossing. However, if that case has been taken as an authority for the proposition that a railroad can only be charged with its proportionate part of the cost of the inclines to the overhead bridge, we correct the impression now.
In this case we have a very simple proposition with no dispute as to the facts and no doubt as to the purpose or necessity of the new highway. All agree that public welfare requires the elimination of the crossing and that the method directed by the Public Service Commission was entirely proper. The relocation of the crossing at a point about 205 feet south of the existing crossing was the best and most reasonable method of accomplishing the elimination. This caused or necessitated the creation of a new highway to reach the place which was most available both for convenience and expense to place the new crossing. To have raised the road where the tracks crossed at grade would have been very expensive, due to the damages caused adjacent property owners by the change of grade. The new back road or cutoff brings the expense down $57,000.
On the argument the counsel for the railroad frankly admitted that his client did not want the existing grade crossing raised at this increased expense and desired the *Page 202 
proposed plan to be carried out. The only objection was to sharing in the cost of the highway improvement beyond the point where the highway commenced the incline to the overhead bridge. This objection we hold to be untenable.
Referring again to the Grade Crossing Act, section 3, paragraph 2, we find how the cost is to be apportioned after the work is completed. Section 5, subdivision 11, specifies how a new highway may be conveyed in fee to the municipalities upon terms and conditions prescribed.
This act prescribes, as it says, a full and complete scheme for removing the danger at grade crossing. As the location may be changed, so must the highways change to meet the new location. It is all one purpose and one improvement, called an elimination proceeding, the cost of which is to be shared by the State, municipalities and railroad as in the act provided. The law also leaves open the opportunity for future or other adjustments as the case may demand.
The order of the Appellate Division should be reversed and the determination of the Public Service Commission affirmed, with costs in this court and in the Appellate Division.
POUND, Ch. J., LEHMAN and O'BRIEN, JJ., concur; HUBBS and CROUCH, JJ., dissent; KELLOGG, J., not sitting.
Ordered accordingly. *Page 203