In the Matter of the Proceeding, under the Grade Crossing Elimination Act, for the Elimination of the Existing Highway-Railroad Crossing at Grade of the Railroad Operated by NEW YORK, ONTARIO AND WESTERN RAILWAY COMPANY and EAST SENECA STREET IN THE CITY OF OSWEGO, OSWEGO COUNTY. (Case No. 5429.)

NEW YORK, ONTARIO AND WESTERN RAILWAY COMPANY, Appellant; DEPARTMENT OF PUBLIC WORKS and Another, Respondents.

Fourth Department, May 22, 1935.

*Elbert N. Oakes* [*Warnick J. Kernan* of counsel], for the appellant.

*Charles G. Blakeslee* [*Sherman C. Ward* of counsel], for the respondents.

EDGCOMB, J.  East Seneca street is a public highway located in the easterly outskirts of the city of Oswego, and crosses at grade eight tracks of the New York, Ontario and Western Railway Company, one of which is the running track and is used for the operation of both passenger and freight trains, and the other seven of which give access to industrial plants, coal trestles, etc.  The tracks cover a distance of 233 feet, measured along the center of the highway.

Pursuant to the provisions of the Grade Crossing Elimination Act (Laws of 1928, chap. 678), the city, in 1929, suggested to the Public Service Commission that this crossing be included in the elimination program to be adopted for the ensuing calendar year.

Hearings were had from time to time until May 21, 1930, when an order was made that the grade of the highway at this point be raised and carried over the railroad tracks. The proceedings were subsequently reopened, and additional testimony was taken. On March 21, 1933, an order was made affirming the previous order of May 21, 1930, in so far as it abolished the crossing at grade. The estimated cost of the improvement is $175,000, one-half of which, under the law, must be borne by the appellant.

Feeling aggrieved by the decision, the railroad company has appealed to this court.

Appellant insists that neither public safety nor public welfare requires the elevation of the highway at this point; that the Commission exceeded its powers in making the orders; that the moving incentive for the elimination was the purpose of the city to switch traffic from Mitchell street to East Seneca street, so as to avoid passing over the tracks of the New York Central Railroad Company where they cross Mitchell street at grade; that the orders are violative of appellant's constitutional rights.

As travel has increased upon our public highways, the advisability, if not the actual necessity, of eliminating much used and dangerous grade crossings has become apparent. This demand has resulted in the enactment of the Grade Crossing Elimination Act (Laws of 1928, chap. 678), and the amendment to the State Constitution in 1925, authorizing the Legislature to create a debt of the State, not exceeding $300,000,000, to provide money for abolishing, under State supervision, railroad crossings at grade at the expense of the State, the railroad companies, and the municipalities.

Subdivision 5 of section 2 of the Grade Crossing Act (Laws of 1928, chap. 678) provides that the "Public Service Commission shall, by order, determine whether the public welfare requires the elimination" of the particular grade crossing under consideration. This broad power has been delegated to the Public Service Commission, an administrative body, and not to the courts. As was pointed out by the Court of Appeals in *People ex rel. New York & Queens Gas Co.* v. *McCall* (219 N. Y. 84, 88), the Legislature might well assume that the members of the Commission, by their experience and by their comprehensive study of the subject, would become especially fitted to deal with and decide questions of this character.

True an appeal is given (Grade Crossing Elimination Act, § 10) to any person aggrieved by an order of the Commission, but that does not permit the court to act as an independent body, and assume to itself the determination of what constitutes public welfare, or to substitute its judgment for that of the Commission. The court must guard against usurping an administrative function.

It has no power to review the determination of the Commission further than is necessary to keep it within the law, or to protect the constitutional rights of the corporations over which it is given control. (*Matter of Public Service Interstate Transportation Co.* v. *Public Service Comm.*, 258 N. Y. 455, 459; *Matter of Grade Crossings* [*N. Y. C. R. R. Co.*], 255 id. 320, 322; *People ex rel. New York & Queens Gas Co.* v. *McCall*, 219 id. 84, 88; affd., 245 U. S. 345; *Matter of N. Y. C. R. R. Co.*, 177 App. Div. 444; affd., 222 N. Y. 541; *Matter of New York, O. & W. R. Co.*, 235 App. Div. 331, 332; *Matter of N. Y. C. R. R. Co.* [*Eddy & Sullivan Crossings*], 229 id. 607, 611; *Interstate Commerce Comm.* v. *Union Pacific R. R. Co.*, 222 U. S. 541, 547; *Interstate Commerce Comm.* v. *Illinois Central R. R. Co.*, 215 id. 452, 470.)

The order of the Public Service Commission is final unless (1) it is beyond the power which the Commission can constitutionally exercise, (2) it is beyond the statutory power conferred on that body, (3) it is based upon a mistake of law, (4) the Commission has acted arbitrarily and unreasonably. (*Interstate Commerce Comm.* v. *Union Pacific R. R. Co.*, 222 U. S. 541, 547.)

Appellant's tracks have been laid at grade across this highway for sometime, just how long does not appear. We shall assume that they were put there by virtue of an ordinance granted by the city, and that the privilege thus bestowed upon the railroad company has now become a vested right. The State may, nevertheless, under its police power, that intangible authority inherent in every sovereignty to protect, within constitutional limits, the order, safety and general welfare of society, step in, and order a separation of grades, whenever public welfare will be advanced by so doing, without making compensation to the railroad company for the property rights thus taken. Appellant is deemed to have accepted its franchise subject to such condition. Neither the contract clause of the United States Constitution (Art. 1, § 10), nor the due process provision of the Fourteenth Amendment, nor section 6 of article 1 of the State Constitution, stands in the way of such an order. (*Village of Carthage* v. *Frederick*, 122 N. Y. 268; *Cincinnati, Indianapolis & Western R. Co.* v. *Connersville*, 218 U. S. 336.)

Such a regulation on the part of the State, however, is subject to judicial scrutiny, and if it is found to be unreasonable or arbitrary, it is the duty of the court to declare it invalid as falling within the condemnation of both the Federal and State Constitutions. (*Denver & Rio Grande R. R. Co.* v. *Denver*, 250 U. S. 241, 243, 244.)

The statute gives to those interested the privilege of a hearing, which carries with it the legal power to introduce testimony. Without this right the act would doubtless be repugnant to the

due process clause of the Constitution. The fact that appellant was accorded a hearing, and that the Commission did not act until after it had heard all the evidence offered by the parties, does not, in and of itself, make the order valid. The mere declaration of the Commission, after a hearing, is not conclusive. The guaranty of the Constitution extends its protecting arm to the fundamental rights of the appellant. The test to be applied to the order appealed from is whether, in view of all the facts, the decision of the Commission was arbitrary and unreasonable, or was justified by a public necessity which the railroad company could lawfully be compelled to recognize. (*Great Northern R. Co.* v. *Minnesota*, 238 U. S. 340, 345; *State of Washington ex rel. Oregon R. R. & Navigation Co.* v. *Fairchild*, 224 id. 510, 523, 524; *Interstate Commerce Comm.* v. *L. & N. R. R. Co.*, 227 id. 88, 91; *Florida East Coast R. Co.* v. *United States*, 234 id. 167, 185.)

Bearing in mind these general rules, which curtail the authority of the court to some extent over that which it possesses in the ordinary case on appeal, let us examine the evidence, in an effort to determine to what extent we may legally go to relieve the appellant from what it asserts is an oppressive and unwarranted order.

The crossing in question, while within the city limits, is in the open country; for three-quarters of a mile to the east there are but three or four houses on the street. At the time this proceeding was instituted, East Seneca street was a dirt road, just wide enough for two vehicles to pass. Recently the city, with funds furnished by the government for relief work, has constructed a concrete pavement, thirty feet in width, west of the crossing, and up to within a few hundred feet of the tracks. Some 4,000 feet to the east of the crossing the highway intersects Mitchell street, which is the principal improved highway leading into the city from the northeast. East Seneca street is not a through thoroughfare, and has never been used as such. It has never been a much-traveled highway; a traffic count, made on three different occasions in October, 1932, showed that about 600 automobiles passed over the tracks each day between seven A. M. and five-thirty P. M. This was a considerable increase in travel over that of previous years.

East of the crossing is located the plant of the Oswego Board Corporation, which in February, 1933, employed 104 persons, all of whom resided west of the railroad, and had to cross the tracks to reach their homes.

The number of train movements over this crossing has gradually been reduced, until, at the time the last order was made, there were but two passenger trains and two freight trains a day. The switching on the other tracks was done between eight A. M. and four P. M.,

and ordinarily consumed but one hour a day. A flagman is on duty from six A. M. to ten-thirty P. M. All ordinary train movements take place between those hours. Trains operating at other hours are stopped, and flagged across the street by the crews. Main traffic is limited to a speed of twenty miles per hour. Visibility is somewhat impaired in the northwestern and southwestern quadrants by reason of high banks at these points.

While any railroad crossing at grade is a place of danger whenever care is not exercised, the fact that no accident has happened at this point during the past twenty years is indicative of the fact that the crossing cannot be said to constitute a menace to the traveling public.

The State Highway Department has not included East Seneca street in any through route out of the city, nor has it taken any position advocating its improvement, or the separation of the grades at this point.

Appellant argues with considerable force that this evidence fails to show any real or substantial necessity for a separation of grades at this point; that this crossing is not beset with danger; that public policy demands that the real hazardous crossings, those where accidents are frequent, should first be abolished, and the people's money and that of the railroad companies should be expended to that end, where it will do the most good, rather than be used to do away with some obscure and unimportant crossing which is infrequently used by either the railroad company or the public, and where an accident has not happened for twenty years, and where one is unlikely to happen. The financial plight of the appellant is also urged as a reason why this improvement should not be ordered at this time.

While this argument has a strong appeal, it is one which should be made to the Commission, and not to us. Well might the Commission have denied the application of the city in respect to this crossing. It may well be noted that the municipality previously objected to the plan because of the cost to the city involved, but after the law was amended so as to relieve it of any share in this expense, and cast it all on the railroad company, the State and the county, the city made application to include the project among the improvements to be ordered by the Public Service Commission. However, our hands are tied to grant appellant the relief it seeks, if there is any evidence of substance from which it can be said that the elevation of the highway above the tracks of appellant would promote the common good.

While, theoretically, the abolition of any grade crossing, no matter how obscure it may be, can be said to benefit some member of the public, the Commission cannot deprive a railroad company

of a vested right upon the theory that some illusive, visionary or fictitious benefit may accrue to the public by so doing; the advantage to be gained must be real and substantial, and must affect enough individuals so that it can reasonably be said that the public, and not an isolated few, are really and actually benefited. Even within this definition of " public welfare," we fail to see how it can be said that the record is devoid of evidence showing that the common good will be advanced to some extent by this change. We cannot reverse this order upon the ground that the decision is against the weight of the evidence. The Public Service Commission must take the responsibility for the order made. We cannot say that their action was so capricious or arbitrary as to make it void. There was some evidence upon which it could act. It may be that its decision was unwise, but we cannot say that it was illegal.

It is urged that the activity of the city in this proceeding is prompted by a desire to divert through traffic from Mitchell to East Seneca street. While the present route over the former highway has been adequate and satisfactory for many years, the use of East Seneca street would shorten the route to the center of the city by some 1,500 feet. We cannot say that this would not be of some benefit to the public.

True the diversion of traffic to this suggested new route would save the public the necessity of crossing two tracks at grade of the New York Central Railroad Company on Mitchell street.

Of course the Commission would not be justified in ordering the appellant to pay one-half the expense of elevating East Seneca street over its tracks, in order to save a proceeding to separate the grades of the highway and the tracks of the New York Central Railroad Company on Mitchell street. While, incidentally, the contemplated improvement might do that very thing, it would, in my opinion, be a mere incident of the project, and would not, as matter of law, deprive the Commission of jurisdiction to make the order appealed from.

Appellant also urges its inability from a financial standpoint to defray its share of the expense of this improvement. Its impoverished condition is shown by the record, and is, in common with that of all railroads in these days of depression, well known to the public.

The statute, however, makes the common good the test by which the propriety of the order must be judged. If this crossing was actually dangerous, and if the public welfare demanded its elimination, the financial inability of the railroad company to meet this added burden would be no legal answer to the power of the Commission to make the order. (*Lehigh Valley R. R. Co.* v. *Public*

*Utility Comrs.*, 278 U. S. 24, 34; *Erie R. R. Co.* v. *Public Utility Comrs.*, 254 id. 394, 410.)

While we cannot take this situation into consideration, the Commission might well have done so before it made this order. There is always a last straw which breaks the camel's back, and if the cost of similar improvements is multiplied too far, it is not impossible that the elimination of many grade crossings will be accomplished, not by raising or lowering the grade of the highway at an enormous cost, but by the railroad taking up its tracks and abandoning its property. That would result not to the benefit but to the detriment of the public. It is not always wise to kill the goose that lays the golden egg. But this is an argument which should be addressed to the Legislature, or to the Commission. We are bound by the law, and cannot pass upon the expediency or wisdom of the order, or take into account the financial condition of the railroad. (*Matter of Staten Island Rapid Transit R. Co.*, 220 App. Div. 80; affd., 245 N. Y. 643; *Erie R. R. Co.* v. *Public Utility Comrs.*, 254 U. S. 394.)

The order compelling appellant to bear its share of the expense of this improvement does not deprive the railroad company of its property without due process of law, and is not violative of the mandate of the fundamental law of the land. (See cases last above cited.)

For the reasons above stated, we think that the orders appealed from must be affirmed, with costs.

All concur, except THOMPSON and CROSBY, JJ., who dissent and vote for reversal on the law on the ground that the determination of the Public Service Commission was arbitrary and capricious and based upon considerations of which the statute governing their deliberations does not admit. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Orders affirmed, with costs.