In the Matter of the Proceeding, under the Grade Crossing Elimination Act, for the Elimination of the Existing Highway-Railroad Crossings at Grade of the Railroads Operated by THE PENNSYLVANIA RAILROAD COMPANY and THE NEW YORK, CHICAGO AND ST. LOUIS RAILROAD COMPANY and FARNHAM-IRVING STATE HIGHWAY No. 5600 in the Town of Brant, Erie County, and of the Railroad Operated by BUFFALO AND ERIE RAILWAY COMPANY and IRVING-SILVER CREEK STATE HIGHWAY No. 5452, Located at Irving in the Town of Hanover, Chautauqua County. (Case No. 5389.)

Petition of the STATE DEPARTMENT OF PUBLIC WORKS, under Section 90 of the Railroad Law, for an Order Determining How a Relocated Portion of FARNHAM-IRVING STATE HIGHWAY No. 5600 Shall Cross the Railroad and Right of Way of THE NEW YORK CENTRAL RAILROAD COMPANY at a Point about 3,000 Feet Easterly from the Existing Undercrossing in the Town of Brant, Erie County. (Case No. 5651.)

THE NEW YORK CENTRAL RAILROAD COMPANY, THE NEW YORK, CHICAGO AND ST. LOUIS RAILROAD COMPANY and THE PENNSYLVANIA RAILROAD COMPANY, Appellants; THE PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.

Fourth Department, November 5, 1937.

*Howard R. Sturtevant,* for the appellant The New York Central Railroad Company.

*Evan Hollister,* for the appellant The New York, Chicago and St. Louis Railroad Company.

*Percy R. Smith,* for the appellant The Pennsylvania Railroad Company.

*Sherman C. Ward* and *Gay H. Brown,* for the respondent, Public Service Commission.

EDGCOMB, J. The highway involved in these proceedings is the old Buffalo and Erie State road over which, in the early days, stage coaches were operated, and which is now a part of one of the main thoroughfares running from New York to the West. The particular portion of the road with which we are interested lies in the hamlet of Irving, west of Buffalo, where the highway passes under the tracks of the New York Central railroad by means of an

underpass constructed by that company back in 1907, and a few feet farther to the south crosses at grade the tracks of the New York, Chicago and St. Louis railroad, commonly known as the Nickel Plate, and the Pennsylvania railroad.

It seems to be conceded on all sides that the crossing over the Nickel Plate and the Pennsylvania railroads is a dangerous one, and should be eliminated. Proceedings looking to that end were duly instituted, and a hearing was had before the Public Service Commission on January 29, 1929. The New York Central was not cited for the reason that it was not desired to eliminate its crossing at this point, it not being at grade. Several hearings were had, and a determined effort was made to work out a plan satisfactory to all parties concerned.

After a thorough and prolonged study of the situation, it was decided that the most feasible and economical plan by which this crossing could be abolished was to reconstruct a portion of the highway on a new alignment, and have it leave the present road at a point approximately 3,000 feet east of the Central underpass, and continue southerly for some 4,587 feet until it intersected a proposed highway which was then contemplated, and which has since been built, known as the Southwestern boulevard, which latter road joins the route in question at Washington street in Irving.

The diverted highway had to cross the Central tracks in some manner; public policy would hardly permit such crossing to be made at grade. Accordingly, in an effort to compel that company to elevate its tracks and permit the newly-constructed highway to pass underneath, a proceeding was instituted under section 90 of the Railroad Law. The two proceedings were thereafter combined.

The orders appealed from provide that the relocated highway, as laid out, shall pass under the existing grade of the New York Central, and that the cost of the underpass, including the pavement within the company's property lines, shall be borne by that company, and that the relocated highway shall be carried under the tracks of the Nickel Plate and the Pennsylvania railroads, and that these two latter companies shall together bear fifty per cent of the cost of the improvement, including the construction and paving of the entire length of new road to a width of forty feet, less the gross cost of that part which lies within the Central right of way lines. The State agreed to bear the expense of the extra width of pavement ordered. The Nickel Plate and Pennsylvania are ordered to build a pedestrian subway eight feet high and eight feet wide at the existing grade crossing. The old portion of the

highway is to be shut off where it crosses the Nickel Plate and Pennsylvania tracks, so that vehicular traffic will be unable to pass over either railroad at that point. The two stub ends of the highway are to be left open so that access may be had to points along the old road. The two ends will constitute a *cul de sac*. All through traffic will be diverted, and will pass over the relocated part of the State road.

It is generally conceded that the plan adopted, including as it does the necessary connecting highway, is much cheaper than any scheme which has been devised to abolish this undesirable crossing by utilizing the present alignment of the highway. Outside of the expense connected with acquiring the new right of way, it is estimated that the cost of the present method of elimination will amount to $317,000 as compared with $831,000 for one plan which follows in general the present highway alignment, and $932,000 for another similar design. From the estimate prepared the present plan will cost the Central approximately $50,000, the Pennsylvania $55,000, and the Nickel Plate $42,000.

The New York Central urges two objections to the order. It insists that it not only derives no benefit whatever from the new construction, but that it is decidedly damaged by reason of the change. The company's station at Irving is located just east of its present underpass. Between the station and the tracks of the Nickel Plate is the plant of the Snyder Packing Company. The closing of the existing Nickel Plate and Pennsylvania crossing will cut off the present access to the station and the packing company's plant from the south, and will compel traffic from that direction to go around by the relocated highway and back over the old road, an extra distance of more than a mile. Based on present conditions, it is estimated that the patrons of the Central and the packing company will have to travel approximately seven thousand extra miles each year by reason of such detour. A considerable portion of the business of the Central at its Irving station comes from the Snyder Packing Company's plant. It is said that this changed condition will greatly inconvenience the patrons of both companies, and will inevitably result in a considerable loss of business. That may be so, but the amount of such damage is largely problematical. No change in the surroundings of any locality can be made without a resulting inconvenience and detriment to someone. It is doubtful if the inconvenience to the patrons of the Central or to the Snyder Packing Company, or any loss which may ensue by reason thereof, will be sufficient to overcome the benefits which will accrue to the public at large by reason of the change.

Ordinarily the advantages accruing to a railroad company by a grade separation outweigh any resulting loss or detriment. The resulting benefits are not ordinarily measured by increased business, but rather by operating advantages. But here it is of no avail to the Central to have the highway traffic diverted under its tracks at this new location. Vehicular traffic now uses its underpass on the present alignment. In neither instance is there a crossing at grade. Why then, the Central insists, should it be compelled to defray the expense of a new underpass when it has already constructed one at its own expense to take care of the traffic on this highway? It is said, and the Department of Public Works acknowledges the correctness of the charge, that the proceeding under section 90 of the Railroad Law was instituted solely for the purpose of facilitating a more economical elimination of the present grade crossing of the Nickel Plate and Pennsylvania.

We must constantly bear in mind the fact that this is not a proceeding to compel the Central to reconstruct its present underpass. That structure has a vertical clearance of 12.75 feet, and a width between abutments of 24.2 feet, and has suitably served the increasing traffic at this point ever since it was constructed some thirty years ago. It is suggested upon this appeal that, if the Nickel Plate and Pennsylvania crossings were to be eliminated by utilizing the present alignment of the highway, a reconstruction of the Central underpass would become necessary, and that the cost of such work would amount to approximately $70,000. In view of this fact it is said that the Central should not be heard to object to an expenditure of $50,000 to raise its tracks over the relocated highway. That question is not before us. We are dealing here with the present, and not with the future; with realities, and not with predictions; with the legal rights of the Central as they now exist, and not with what that company may be called upon to do under other circumstances.

It may be charged that these two proceedings are not entirely consistent; that the relocated highway is either a new road, or it is not; that it is either a realignment of the old highway, or it is not; that it must be one or the other; that it cannot be a new road as to the Central, and a mere change in the alignment of the old highway as to the Nickel Plate and the Pennsylvania. It does seem somewhat illogical to take a few feet — the width of the Central right of way — out of the middle of a strip of newly-constructed road 4,587 feet long, and call the small portion a new road, and make it subject to the provisions of section 90 of the Railroad Law, and treat the rest as a realignment of the original highway.

But this inconsistency disappears if we cease to treat the road as an indivisible unit, and consider the matter relatively, as it pertains to the legal rights of the Central on the one hand, and those of the Nickel Plate and the Pennsylvania on the other. Taking this view of the matter, as I think we must, it is quite clear that the portion of the road within the property lines of the New York Central may properly be considered a new road, to which the provisions of section 90 of the Railroad Law are applicable, and that the balance of the highway may be looked upon as a realignment of an existing way, the improvement of which, if it fairly constitutes a part of the elimination project, is governed by the Grade Crossing Act. ■ The old highway, where it passes under the Central's tracks, is still kept open to traffic as a means of access to the station and to the Snyder plant. The road is not closed; the Central crossing at this point is not done away with. Where the relocated highway passes under the Central tracks is a separate and an additional crossing. The situation as to the Nickel Plate and Pennsylvania is entirely different. There the existing crossing is abolished; it will no longer exist; in its place will be an underpass some three thousand feet to the east.

So while the Central has been brought into the picture at this time solely by reason of the necessity of eliminating a dangerous crossing over two other railroads, and for the purpose of enabling the new road to cross under the Central's tracks, at that company's expense, still we cannot say, unfortunate as may be the Central's predicament, that its constitutional rights have been invaded, or that the Commission was without power to make the order appealed from. We can only pass upon the power of the Commission. The wisdom of the order is beyond our jurisdiction.

We think that the Public Service Commission had jurisdiction to make the order requiring the newly-constructed portion of the highway to pass under the tracks of the New York Central railroad under section 90 of the Railroad Law. (*Brush* v. *New York, New Haven & Hartford Railroad Co.*, 218 N. Y. 264, 269.)

Neither the Nickel Plate nor the Pennsylvania oppose the general plan which has been adopted for the abolition of this objectionable crossing, but both claim that certain obligations imposed upon them are oppressive, and should not be permitted to stand. The objectionable features of the order from their standpoint are, (1) the requirement that they shall pay one-half of the cost of construction, including the paving with concrete for a width of forty feet, of the entire 4,587 feet of new highway, with the exception of the few feet within the Central right of way; (2) the order

to build a pedestrian subway on the site of the present crossing; (3) the failure to fix the westerly approach grade of the tracks at three-tenths per cent; (4) that their financial condition is such that they are unable to comply with the terms of the order.

Concededly the Commission has no power to compel either railroad to pay for any part of this improvement which is not fairly connected with the elimination of the crossing. The Commission, however, is given broad powers, and may properly include within the requirements of the order whatever is suitable or appropriate to the project itself. The rule is well settled that the approach to an overhead crossing or an underpass is not confined to the points in the highway at which the grade is depressed below or raised above the level of the surrounding land. (*Matter of Grade Crossing [Lehigh Valley R. R. Co.]*, 264 N. Y. 195, 201.)

The order of the Commission, however, must be reasonable, when viewed in the light of the surrounding circumstances, or it will be considered arbitrary and oppressive, and will not be permitted to stand. The police power of the State is subject to the constitutional limitation that it may not be exercised capriciously or unreasonably. (*Nashville, Chattanooga & St. Louis Ry.* v. *Walters*, 294 U. S. 405.)

We cannot say that the provision making the Nickel Plate and Pennsylvania share in the expense of building approximately 3,332 feet of new highway outside the subway itself — 742 feet to the north and 2,590 to the south — is an arbitrary exercise of power. There must be some way provided to get to the subway from the old road. It would be unavailing to build such a structure, and furnish no means by which it could be reached. The approaches are all a part of the improvement, for without them the underpass would be useless, and the money spent for its construction would be a total loss. True, the new road crosses two existing highways to the south before it reaches the point where the appellants' obligation ceases, but these highways furnish no suitable connection to any part of the State road.

The appellants suggest that, if they are made to share in the expense of building this entire strip of new road, the Commission, had it seen fit to divert traffic to some other road, might have extended the new construction several miles farther, and charged the extra cost of construction to the elimination project. Of course, there is a limit to the amount of new road which could properly be considered a part of any improvement. No hard and fast rule can be laid down as to just where that limit is. It is determined by the rule of reason. Each case must be decided upon its own facts. We simply hold that, under the circumstances

as they exist here, the Commission did not act in a vague or unreasonable way when it held that the entire strip of new road was a part of the elimination project.

The Legislature has given to the Public Service Commission, and not to the courts, the power to compel a railroad company to eliminate its grade crossings, and to determine the manner in which the work shall be done. The courts should carefully refrain from usurping the functions of the Commission. It is only when the Commission has exceeded its authority or has acted in an arbitrary and an unreasonable manner that the courts can interfere. (*Matter of New York, Ontario & Western R. Co.*, 244 App. Div. 664, 666, 667; affd., 271 N. Y. 567, and cases there cited.)

So far as the requirement for the construction of a pedestrian subway is concerned, we find no basis or warrant for the order. The new underpass where the relocated highway passes under the tracks of the Nickel Plate and Pennsylvania is wide enough to permit its use by pedestrians. True, it is over half a mile east of the old crossing, and might, for that reason, cause some inconvenience to one wishing to cross the railroad on foot at the old highway. Outside of two traffic counts made some time ago, the evidence is silent as to the number of pedestrians who ever used this crossing. True, the Snyder Packing Company plant lies to the north of the tracks, but how many, if any, of its employees go to and from their work on foot, or how many would ever use the proposed subway, we are not told. It would cost the two railroads $8,000 to comply with this part of the order. We can only speculate as to whether enough people would use this proposed subway to warrant its construction, and an order requiring a railroad company to expend a substantial amount of money in improvements cannot be based on mere speculation. This part of the order must, therefore, be considered confiscatory, and cannot be permitted to stand.

We deem the provision relating to the grade of the tracks at this new crossing to be largely an engineering problem. The plan of the railroad to reduce its ruling grade has not reached such a stage as would warrant us in saying that the action of the Commission in this particular is oppressive.

The Nickel Plate and Pennsylvania also urge that they are not in a financial position at the present time to pay their respective share of the cost of this improvement. We appreciate the difficulties under which the appellants are laboring, but this argument is of no avail here unless we go so far as to hold that the order is unreasonable, and that we cannot do. The Commission is the only body which can properly give heed to this objection. (*Matter*

*of New York, Ontario & Western R. Co.*, 244 App. Div. 664, 670, 671; affd., 271 N. Y. 567.)

It follows that the orders appealed from in the proceeding for the elimination of the grade crossings should be modified by striking out the provision requiring the Nickel Plate and Pennsylvania railroads to construct a pedestrian subway at the existing highway-railroad crossing at grade, and as modified affirmed, without costs, and that the orders in the proceeding instituted under section 90 of the Railroad Law should be affirmed, with costs.

In the first above-entitled proceeding:

All concur. Present — SEARS, P. J., EDGCOMB, CROSBY, LEWIS and CUNNINGHAM, JJ.

Orders modified by eliminating the provision for a pedestrian underpass and as modified affirmed, without costs of this appeal to any party.

In the second above-entitled proceeding:

All concur. Present — SEARS, P. J., EDGCOMB, CROSBY, LEWIS and CUNNINGHAM, JJ.

Orders affirmed, with costs.