Harris, J.
The question now the subject of review goes to the authority of the Public Service Commission in the course of a grade crossing elimination proceeding to order, as it has done, the construction of a new railroad station and a new signal plant at the expense of the railroad. In the course of the proceeding so brought to eliminate certain grade crossings in the city of Buffalo, to which reference will be made as “ The *269 Terrace Elimination Project ”, the respondent, Public Service Commission, has ordered the abandonment of a railroad station on “ The Terrace ” in the city of Buffalo and its replacement by the construction of a new station, about one-half mile east of the station to be abandoned, and the replacement of the present signaling system (which by reason of the elimination ceases to be of use) by a new signaling system. The appellant, New York Central Railroad Company, contends that in directing the railroad company to pay the cost and expense of these changes the Public Service Commission has misconstrued the effect of section 14 of article VII of the Constitution of the State of New York, as amended in 1938, and the enabling act enacted thereunder by chapter 289 of the Laws of 1939. The contention of the railroad company and of the amici curios is in the alternative; either (a) that under the amendment to the Constitution and the enabling act enacted thereunder, the State should bear this expense (except as to the possible liability for payment of 15% of the elimination cost under the betterment provision of section 14 of article VII); or, (b) that such improvements, consisting of the station and the signaling system, cannot be ordered at the railroad’s expense without the request or consent of the railroad company. There is a third item of work to be constructed at the expense of the railroad company under the order of the Public Service Commission, consisting of the use of heavier rails, but the decision on this question is not seriously criticized by the railroad company.
The 1938 amendment to section 14 of article VII of the Constitution has not been the subject of discussion or of construction in the appellate courts of this State except for the questions involved in Matter of Kolb v. Holling (260 App. Div. 120, revd. 285 N. Y. 104). The matters there involved were not similar in content to those now under discussion.
The matters here involved are so important to the authority of the Public Service Commission and to railroad companies operating in the State of New York that the amici curies (Delaware, Lackawanna & Western Railroad Company, The Pennsylvania Railroad Company, The Long Island Railroad Company, Baltimore and Ohio Railroad Company, Staten Island Rapid Transit Railway Company, Lehigh Valley Railroad Company and H. S. Palmer, J. L. Loomis and H. B. Sawyer, trustees of the New York, New Haven & Hartford Railroad Company), important railroads, other than the appellant, having lines within the State of New York, have been alloAved to express their views to this court by brief and argument.
*270 The city of Buffalo is the situs of extensive railroad operation and termini. Among the railroads serving Buffalo are the appellant and its allied lines. The New York Central coinés into Buffalo from the east and out of Buffalo, either by itself or through allied lines, departs to the west. Such departure divides into two general routes, one continuing from Buffalo through United States territory, and the other one continuing from .Buffalo across the Niagara Eiver and into Canada. This proceeding has to do with the latter mentioned operation of the New York Central Lines. Previous to 1925, all of these operations centered in a main New York Central station which was in the downtown southern part of the city east of Main Street. Prior to 1896, leaving this station the lines going into Canada followed across Main Street and along “ The Terrace ” at grade. In the year 1896 as result of the work of the Grade Crossing and Terminal Station Commission of the City of Buffalo, the crossing of Main Street and the route of part of the line across the Terrace was sunk into a tunnel partly covered and partly uncovered; arising out of the tunnel to street grade in the Terrace the railroad lines and tracks turn west from the Terrace into Church Street, and from Church Street along the lake and waterfront toward the northern part of the city known as “ Black Bock ” and toward Niagara Falls, part of the lines cros' "ng the Niagara Eiver at Élack Bock from the city of Buffalo and the other portion crossing the Niagara Eiver from the city of Niagara Falls, both into Canada. In 1925 the New York Central entered into a contract with the Grade Crossing and Terminal Station Commission of the City of Buffalo, now succeeded by the Public Service Commission (L. 1946, ch. 902), which contract provided for the elimination of the tracks in the Terrace, the construction of a new passenger station in East Buffalo, some two miles from the then location of the main station, and for the construction at the expense of the railroad company (appellant herein) of a new downtown station, approximately át the location covered by the plan herein. After the execution of this contract, the new main station was erected at East Buffalo, but neither the elimination of the Terrace tracks nor the construction of the new downtown station was performed. The crossings along the Terrace and Church Street have long been regarded as dangerous and in 1929 proceedings were begun which resulted in the first order of the commission covering the “ Terrace Elimination Project ”, In 1940 the commission issued a revised order determining the method of elimination to be followed and directed the railroad company *271 to submit general plans. These plans were submitted in 1941 and were approved by the commission on September 23, 1941. Revised plans were submitted by the railroad company in 1944 and 1945. Both of these plans, those of 1941 and of 1944-1945, showed as projected, in connection with the elimination, the construction of a new station and a new signal system as now ordered. The 1941 plans contained no notations which could be regarded as expressing the thought of the railroad as to who should bear the expense of construction of station and of signal system, but on the revised plans of 1944-1945, evidently with reference to the questions now involved, the railroad company noted on such revised plans the following: “ All work shown on this plan is necessary for the elimination of grade crossings ”, “ no railroad improvements ”, “ no railroad improvements except increased weight of rails, if any ”. In reference to such legend or notations, the commission took the position (which has led to this review) that, in approving such plans with the notations thereon, “ The Commission was therefore asked, as a result of the necessity of approving the plans, to commit itself to a determination that the railroad would not be required to contribute anything to the cost of the project.” (Memorandum of commission accompanying order of October 16, 1945.) It then made the determination that the railroad company would be subject to the expense of building the station and new signal system (less the present value of the old station and old signal system) and directed that the notations above described be stricken from the plans and that the expense of erecting the station and new signal system be borne by the railroad. On an application for a rehearing made by the railroad, such rehearing was denied (order of December 28,. 1945). It is from both of such orders, the first dated October 16, 1945, and the second December 28, 1945, that the railroad has appealed.
The merits of the question now before the court lie in the construction of the 1938 amendment and the 1939 enabling act. In considering these merits, it is well to bear in mind the reasons for the existence of the Public Service Commission. The commission has the power and since its inception has had the power to direct any public carrier railroad in the State of New York to make construction for two different purposes: (1) to eliminate (for the safety of the general public not then traveling on the railroad but using the public highways) the dangers of railroad crossings at grade; (2) to make improvements in construction and service of railroads for the benefit of the customers of the railroads.
*272 Railroad crossings on the grade of highways, because of the inherent dangers resulting in tremendous loss of life and property, have for many years been the subject of- deep, serious consideration by those interested in the welfare of the State, and, as the result largely of the great public service of Alfred E. Smith, there was added to the Constitution of the State, section 14 of article VII (adopted November 3,1925, and amended November 8, 1927), a provision for the creation óf a State debt not to exceed $300,000,000, to provide means for the elimination under State supervision of railroad crossings at grade. For such elimination the State and, in certain cases, municipalities would bear up to 50% of the expense; the other 50% to be advanced to the railroad concerned in the elimination, and such second 50% to be repaid by such railroad to the State. Except for this constitutional amendment and similar provisions in the Constitution for public welfare, the power of the Legislature or any public officer to give or loan money in aid of any individual, association or corporation was forbidden and is forbidden by section 8 of article VII of the Constitution. There can be no infringement on such section 8 of article VII, except by amendment to the Constitution.
When the 1938 State Constitutional Convention was elected and organized, there was remaining in the State treasury a considerable portion of the $300,000,000 provided for in the 1925-1927 amendments to section 14 of article VII of the Constitution. There was brought to the attention of the convention by some of its members who, through their public service and interest, were cognizant of the situation, the fact that the elimination of grade crossings for the safety of users of public highways, for some reason, had not proceeded apace with the requirements of public safety. To the committee on highways, parkways and grade crossings fell the initial consideration of grade crossing problems. On this committee were men who, by repute and experience, would be sure to seek signally the benefit of the people of the State. Robert Moses, one of the best qualified men in the country on highways and traffic matters, presented to the convention a proposed amendment to the Constitution which would appreciably reduce the amount to be paid by the railroads toward the expense of grade crossing elimination. Following the introduction of such proposed amendment, the then Governor of the State, the Honorable Herbert H. Lehman, sent to the convention a communication drawing attention to the fact that the amendment as proposed by Mr. Moses might possibly be construed as relieving the railroads of expenses for *273 railroad improvements. The amendment proposed by Mr. Moses and the communication of the Governor then had the attention of Abbott Low Moffat who, for many years, had done most important work in the Legislature in reference to the finances of the State, Charles Poletti, afterwards Governor of this State, Alfred E. Smith and George A. Fearon and other members of the committee. From arguments developed the information that there had been considerable criticism of the administration, of the Public Service Law because of delays in elimination and that there had existed for many years deathtraps in metropolitan New York, especially in Brooklyn. The main objective of Mr. Moses was to secure the speedy elimination of those deathtraps and concurring in that desire were the other members. But some of these members, joining in the discussion, drew attention to the possible construction of the proposed amendment presented by Mr. Moses which might cause the State to be required to pay for railroad improvements. On this subject Senator Fearon, because of his general experience and his observation of the then recent elimination and construction of a railroad station in Syracuse, proposed an amendment to Mr. Moses’ proposal which amendatory proposal would prevent gifts to railroads for improvements. Finally, as a result of this discussion, the proposed amendments and the message of Governor Lehman, there was evolved the 1938 amendment to section 14 of article VII of the Constitution which is now under consideration. So far as pertinent to this discussion, such 1938 amendment reads as follows: “ The expense of any grade crossing elimination the construction work for which was not commenced before January first, nineteen hundred thirty-nine, including incidental improvements connected therewith as authorized by this section, whether or not an order for such elimination shall theretofore have been made, shall be paid by the state in the first instance, but the state shall be entitled to recover from the railroad company or companies, by way of reimbursement (1) the entire amount of the railroad improvements not an essential part of elimination, and (2) the amount of the net benefit to the company or companies from the elimination exclusive of such railroad improvements, the amount of such net benefit to be adjudicated after the completion of the work in the manner to be prescribed by law, and in no event to exceed fifteen per centum of the expense of the elimination, exclusive of all incidental improvements. The reimbursement by the railroad companies shall be payable at such times, in such manner and with interest at such rate as the legislature *274 may prescribe. * * # A grade crossing elimination the construction work for which shall be commenced after January first, nineteen hundred thirty-nine, shall include incidental improvements rendered necessary or desirable because of such elimination, and reasonably included in the engineering plans therefor.” In the following Legislature (1939) where sat a number of men who were members of the convention committee on highways, parkways and gradé crossings, and other members of the constitutional convention, there was enacted chapter 289 of the Laws of 1939, effective April 13, 1939, for the purpose of putting into effect the constitutional amendment. Such enabling act was as follows:
“ AN ACT supplemental to several acts providing for the elimination of highway-railroad crossings at grade, applicable only to eliminations the construction work whereof shall be commenced after January first, nineteen hundred thirty-nine * * *
“ Section 1. This is an enabling act to carry out section fourteen of article seven of the constitution as approved by the people November eighth, nineteen hundred thirty-eight. It shall be known by the short title * grade crossing elimination act of nineteen hundred thirty-nine.’ It shall be deemed supplemental to the several acts of the legislature providing for the elimination of highway-railroad crossings at grade hereinafter enumerated in section two of this act and shall apply to every highway-railroad grade crossing elimination the construction work for which is commenced after January first, nineteen hundred thirty-nine.”
Section 2 includes chapter 679 of the Laws of 1928 (the Buffalo Act) and provides that such act “ shall continue to apply with full force and effect to the elimination of highway-railroad crossings at grade, * * * except that as to such eliminations upon which construction work is commenced after January first, nineteen hundred thirty-nine ■ (1) the elimination shall include incidental improvements rendered necessary or desirable because of such elimination, and reasonably included in the engineering plans therefor, and shall be determined by the commission having jurisdiction, and except (2) as the provisions of such act or acts are otherwise inconsistent with section fourteen of article seven of the constitution as now in force or with the provisions of this act.”
“ § 3. In all proceedings where an elimination has been directed but where the construction work has not been commenced prior to January first, nineteen hundred thirty-nine, the commission having jurisdiction may, • * * hold *275 a further hearing to determine the incidental improvements, if any, rendered necessary or desirable because of the elimination and reasonably included in the engineering plans therefor and shall amend its order accordingly. Any elimination order hereafter made by such commission shall specify incidental improvements, if any, rendered necessary or desirable because of such elimination and reasonably included in the engineering plans therefor.”
“ § 4. The expense of every grade crossing elimination, the construction work for which is commenced after January first, nineteen hundred thirty-nine, including incidental improvements connected therewith, as determined by the commission to be necessary or desirable because of the elimination and reasonably included in the plans for such elimination and railroad improvements not an essential part of the elimination but desired by the railroad company or companies, shall be paid in the first instance out of the state treasury * * *. Upon the completion and acceptance of the work of elimination the commission having jurisdiction shall hold a hearing upon due notice to all interested parties and thereupon shall determine (1) the cost of such elimination including incidental improvements connected therewith; (2) the cost of such elimination exclusive of such incidental improvements; (3) the cost of the railroad improvements not an essential part of the elimination; (4) the amount of the net benefit to the railroad company * * * exclusive of such railroad improvements * * V’
Comparing the 1938 amendment with the previous provisions of section 14 of article VII of the Constitution, it is found that the amendment differs from the 1925-1927 amendments in the following important particulars: (1) The contribution of the railroad company to elimination expense is reduced from 50% to not more than 15%. (2) A grade crossing elimination may include incidental improvements rendered necessary or desirable because of such elimination. The enabling act could not transcend the effect and purpose of the constitutional provisions. It is because of such amendment to section 14 of article VII and the provisions of such enabling act that the appellant railroad company claims that it should be absolved from the expense of constructing the new station and new signal system and which contention, as has been said, lias the support of the amici curice.
What was really the intent, and is the effect, of the 1938 amendment and the 1939 enabling act? In the light of the discussion before the constitutional convention and its com *276 mittee and the reasons stated in such discussion for the arguments pro and con, it must be held that the State finally was to pay only for the elimination of dangers to the public arising from grade crossings. The appellant and the amici curia argue that the language of the enabling act and its basis, the constitutional amendment of 1938, is susceptible of such a construction that “ incidental improvements ”, if ordered in connection with the elimination, are part of tbe elimination and are to be paid for in the first place from State elimination fund subject to reimbursement to the State by the railroad company of not more than 15% for betterments. The people of the State and the Legislature never intended that a railroad station and a signaling system, which would better the property of the railroad company and its service for which it receives pay from the traveling public, should be paid for by the State and especially out of the grade crossing elimination fund. What the people of the State did through their constitutional convention and in their adoption of the constitutional amendment and through their legislature by the adoption of the enabling act, falls into two categories (1) provided for the larger payment on the part of the State toward grade crossing elimination, and (2) emphasized the authority of the Public Service Commission to order incidental improvements to be constructed during the course of the elimination and to be provided for in such elimination proceeding and order growing therefrom.
Whether a new railroad station and a new signal system should be regarded as incidental improvements and ordered with the elimination, is another question herein involved. At first blush, the word “ incidental ” connotes subordination to a primary purpose, and ordinarily the use of the word is regarded as referring to minor matters; the word also has the significance of matters collateral and accessory, directly pertinent to, or in some relation to. (42 C. J. S., p. 520; 2 Jacob’s Law Dictionary [1797]; Black’s Law Dictionary [3d e'd.]; English, Law Dictionary; Anderson’s Dictionary of Law; Webster’s New International Dictionary [2d ed.], p. 1257; Wharton’s Law Lexicon [14th ed.], p. 499; 2 Stroud’s Judicial Dictionary [2d ed.], pp. 943-944; 3 Words and Phrases Judicially .Defined [England]; 20 Words and Phrases [Perm, ed.], p. 418 et seq.) The respondent herein (the commission) has taken the position that the construction of the station and the signal system in connection with the “ Terrace Elimination Project ” is an incidental improvement. With the facts in this record, there can hardly be any quarrel in this respect with the position *277 of the commission; but, if there should be such quarrel, there still remains as support to the order of the commission the provisions of section 50 of the Public Service Law, from which quotation as pertinent is made as follows: “ If in the judgment of the commission, * * * stations * * * or any other * * m equipment, facilities or device for use by any common carrier, railroad corporation * * * ought reasonably to be provided, or any repairs or improvements * * * should reasonably be made thereto ® in order to secure adequate service or facilities for the transportation of passengers or property, the commission shall, after a hearing either on its own motion or after complaint, make and serve an order directing such repairs, improvements, changes or additions to be made # # * and every * * * railroad corporation * * i! is hereby required and directed to make all repairs, improvements, changes and additions required of it by any order of the commission served upon it.”
The provisions of the amendment of 1938 to section 14 of article VII, which provided for the inclusion of “ incidental improvements rendered necessary or desirable ” because of the elimination, and the provisions of the enabling act of 1939 of similar language were but an expression of the power lying in the commission as provided previous to that amendment and contained in section 50 of the Public Service Law, which section is still in full force and effect. Prior to the adoption of the 1938 amendment to the Constitution and the 1939 enabling act, railroads paid for railroad improvements as ordered by the Public Service Commission (Matter of New York Central R. R. Co. v. Public Service Comm., 240 App. Div. 926, affd. 264 N. Y. 541) and this liability was not changed by the people’s will as so expressed in 1938 and 1939.
The appellant claims that it cannot be compelled to pay for any improvements unless it consents to such improvements being made. Such claim is clearly adversely met, first, by the general authority of the Public Service Commission to order improved facilities for the use of the general public using the railroads, and second, specifically by the authority given in section 50 of the Public Service Law. It is remembered, with interest, that in 1925, by contract with the city the appellant agreed to build a new downtown station and that on its plans submitted in 1941 and 1944-1945 it showed the new downtown station and new signaling system, although it did note on the 1944-1945 plans that it felt not liable for the expense of such construction. The appellant does not now say that the new *278 signaling system and the new downtown station are not necessary, and in view of its contract with the city and the plans submitted by it in 1941 and 1944-1945 it cannot say that such construction is not now necessary' for the improvement of its service; it only contends that it cannot be compelled by the order herein to proceed with and pay for such construction.
“ The state shall be entitled to recover from the railroad company * * * by way of reimbursement * * * the entire amount of the railroad improvements not an essentia] part of elimination * * (N. Y. State Const., art. VII, § 14, as amd. in 1938.) Certainly the construction ordered ai the expense of the railroad herein is not essential to the cure of grade crossing dangers.
The orders of the Public Service Commission herein are not unreasonable, arbitrary or capricious, and are well within the powers of the commission, both constitutional and statutory. The commission has made no mistake of law. (Matter of New York, Ontario & Western Ry. Co., 244 App. Div. 664, affd. without opinion, 271 N. Y. 567; Int. Com. Comm. v. Union Pacific R. R., 222 U. S. 541, 547.)
Both orders from which appeal is taken should be affirmed, with costs.
All concur. Present — Taylor, P. J., Dowling, Harris, Larkin and Love, JJ.
Orders affirmed, with costs. [See post, p. 812.]